# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 21-2092V**

ROY DAY,

Petitioner,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES,

Respondent.

Chief Special Master Corcoran

Filed: July 20, 2026

*Jonathan Joseph Svitak, Shannon Law Group, P.C., Woodridge, IL, for Petitioner.*

*Lauren Kells, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On October 27, 2021, Roy Day filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act").[3] Petitioner alleges that he suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, after receiving an influenza ("flu) vaccine on September 10, 2020. Amended Petition at 1, ¶¶ 2, 33-34, 39.

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

[3] On November 7, 2023, Petitioner filed an amended, providing additional detail and medical record citations. ECF No. 26.

Respondent disputes whether Petitioner has established a symptoms onset consistent with the requirements of a Table SIRVA. For the reasons set forth below, I find that Table onset is likely met, and that Petitioner has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I. Finding of Fact Regarding Onset

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a) XIV.B. (2017) (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### A. Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs*., No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs*., 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs*., 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs*., No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs*., 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs*., 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B. Analysis

I make this finding after a complete review of the record, which includes all medical records, affidavits or declarations, and additional evidence filed. Specifically, I highlight the following:

- Prior to vaccination, Petitioner suffered numerous conditions, including a pulmonary embolism, breathing difficulties and a crackling sound in his chest, smoking, and unhealthy, albeit nondependent, alcohol consumption. Ex. 4 at 264-339. When in the USA, he obtained primary medical care from the Veterans Administration ("VA") clinic in Vancouver, Washington.[4]

- On September 10, 2020, Petitioner (52 years old) received the flu vaccine intramuscularly in his left deltoid at a Walgreens Pharmacy in Vancouver, Washington. Ex. 5 at 5-6 (vaccine record).

- That afternoon, Petitioner called his primary care provider ("PCP"), complaining of "[b]reathing [d]ifficulty (wheezing)" (Ex. 4 at 271), specifically "audible chest crackling sounds when reclining" (*id* at 270). Characterizing this condition as "an intermittent symptom," he stated that he had suffered from these symptoms "a couple of times in the past . . . [and it] usually happens when he is supine." *Id.* at 272. The triage nurse recommended Petitioner visit the VA clinic within two to three days. *Id.* at 271. No mention of shoulder pain was made at this time.

- Shortly after that call, Petitioner participated in a telephonic dental evaluation of a cracked tooth and dental pain – rated as four out of ten. Ex. 4 at 268. In his declaration, Petitioner explained that he shattered the molar six days earlier on September 4, 2020. Ex. 1 at 9. Petitioner stated that he was returning to Cambodia, where he lives, within two weeks, and wished "to have a dentist in the USA look at it and tell [him] what need[ed] to be done." Ex. 4 at 268. He was instructed to come to the clinic the next day for a limited, in-person evaluation. *Id.* at 269.

- The next morning (on September 11, 2020), Petitioner called again to discuss his breathing issues. Ex. 4 at 266. Describing "crackling/bubbling sounds while breathing in supine position," he reported the symptoms "mostly occur[ed] at night," occurred in August for two weeks, and then abated for one week before returning. *Id.* at 266-67. Admitting to being an active smoker, Petitioner expressed an interest in quitting – believing the two-to-six-week quarantine period after his return to Vietnam would be a good time to make this attempt. *Id.* at 267.

[4] In his medical records and declaration, signed under penalty of perjury as required by 28 U.S.C.A. § 1746, Petitioner explained that he resides in both Washington State and Cambodia. Ex.1; Ex. 4.

- On September 23, 2020, Petitioner underwent surgical extraction of his broken, back lower molar. Ex. 4 at 260-66. It was noted that he lived in Cambodia but returns to the USA occasionally for medical care. *Id.* at 260.

- Two days later on September 25, 2020, Petitioner called the VA, seeking a COVID screening to be performed within 72 hours of his return to Cambodia on September 30, 2020. Ex. 4 at 247-48. In response, he was "informed that at this time the VA is only testing sympotmatic [sic] patients." *Id.* at 248.

- On September 29, 2020, the day before his return to Cambodia, Petitioner called his dentist, complaining of "some sharp discomfort." Ex. 4 at 246. Estimating his pain severity, he reported that it was worse in the morning, would wake him up at night, and would improve "with pressure applied against his teeth." *Id.* Noting that his flight was in the evening, Petitioner was scheduled for an in-office appointment the next morning. *Id.*

- The morning of September 30, 2020, the dentist diagnosed Petitioner with alveolar osteitis (dry socket). Ex. 4 at 244-45. He placed dry socket dressing where the tooth had been and prescribed hydrocodone with acetaminophen. *Id.*

- On November 18, 2020, Petitioner called the VA call center, but the record does not include any information as to the reason for the call. Ex. 4 at 241-42.

- While still in Cambodia on December 3, 2020, Petitioner called the VA, requesting a return call from his care team "to discuss [his] recent flu shot (end of Sept.)." Ex. 4 at 240. He "state[d] that [his] shoulder continue[d] to hurt and [he] has limited range of motion." *Id.*

- Unable to reach him by telephone, VA personnel messaged Petitioner, asking that he call and informing him that an order for a consult with his PCP had been submitted. Ex. 4 at 239.

- When Petitioner called again on December 8, 2020, he "state[d] [that] his arm hurt[] and [wa]s in lots of pain and c[ould]n't move his arm backwards without being in a lot of pain." Ex. 2 at 238.

- Two days later, Petitioner spoke to a triage nurse. Ex. 4 at 235-38. Recounting his flu shot and tooth removal in September 2020, Petitioner

reported "increased pain to the injection site" when he stopped taking the hydrocodone prescribed for his tooth extraction. *Id.* at 235. Estimating his pain severity as two normally, increasing to eight for short periods, and duration as ten weeks, Petitioner described difficulty sleeping and the need to use two hands when closing a sliding glass door. He requested home exercises and medication. *Id.*

- Petitioner was informed there was nothing the VA could do for him "considering his geographical separation" - that he could be helped when back in the USA, but should meanwhile pursue medical care in Cambodia. Ex. 4 at 238.

- Four days later (December 14, 2020), another nurse attempted to communicate the requested exercises via a HIPPA compliant method. Ex. 4 at 235. And Petitioner followed up by telephone on December 18, 2020. *Id.* at 233-34. He expressed frustration that the VA could not mail him pain medication. *Id.* at 233.

- On January 14, 2021, Petitioner called to schedule an appointment for January 26th or later, when he would be back in the United States. Ex. 4 at 232.

- Instead, on January 21, 2021, Petitioner participated in a video appointment with his PCP. Ex. 4 at 221-31. He reported he was using medication to sleep, had seen a medical provider in Cambodia who informed him that he had frozen shoulder, and had undergone an MRI which showed some inflammation, degenerative changes, and no tears or dislocations. *Id.* at 227.

- The PCP observed Petitioner "[wa]s able to raise his arm but not quite over his head and [wa]s not able to reach behind with his arm." Ex. 4 at 230. He ordered x-rays, physical therapy (PT"), Meloxicam, and topical analgesic cream for when Petitioner returned to the USA. *Id.* at 227.

- On February 3, 2021, Petitioner messaged his PCP, asking if he had reviewed his x-rays. Ex. 4 at 219; *see id.* at 26-27 (results from x-rays taken on February 1, 2021). He reported that he "c[ould]n't sleep and [his] ability to function [wa]s becoming dangerously impaired both by ROM limitations and sleep deprivation." *Id.*

- Noting that the x-rays revealed “some arthritis,” the PCP suggested PT, a steroid injection, undergoing another MRI, and increasing Petitioner’s pain medication dosage. Ex. 4 at 220. In response, Petitioner raised a concern with the proposal to increase his medication – noting he was having vision difficulties,[5] requested a referral to a specialist so he could receive a definitive diagnosis, expressed a willingness to undergo another MRI and receive a steroid injection after diagnosis, and stated that he was scheduled to begin PT on February 17, 2021. *Id.* at 217.

- Performed on February 10, 2021, this second MRI revealed “[m]ild supraspinatus tendinosis with bursal surface fraying,” “[m]ild degerative arthrosis of the acromioclavicular join” and “[m]ild subacromial/subdeltoid bursitis.” Ex. 4 at 26.

- At his initial PT evaluation on February 17, 2021, Petitioner reported left shoulder pain since September 2020, theorizing that his inoculation was “bad” because “they used [a] too long needle.” Ex. 4 at 193 (noted by quotes in the record to be Petitioner’s exact wording). He estimated his pain severity varied between three to five. *Id.*

- Observing that Petitioner exhibited “extremely limited” active ROM and “present[ed] with highlighted apprehension” during passive ROM (*id.* at Ex. 4 at 196), the therapist recommended Petitioner attend PT once a week for eight to twelve weeks (*id.* at 197). She also provided Petitioner with a home exercise program (“HEP”) – stretching exercises to be performed at least twice a day. *Id.* at 196-97.

- At his March 10, 2021 PT session, it was noted that Petitioner “ha[d] been adherent with his HEP.” Ex. 4 at 192.

- At his fifth and last PT session during the Spring 2021, Petitioner reported a pain level of two and an “itchy” feeling, like his injury was healing. Ex. 4 at 183. Observed to have performed the PT exercises well but still exhibiting reduced ROM, he was provided with a printout of exercises. *Id.*

[5] Regarding this issue, Petitioner’s PCP noted that he was “unaware of occular [sic] symptoms as he is having associated with use of NSAIDS like Meloxicam.” Ex. 4 at 212. Noting this “[wa]s not a reaction commonly associated with meloxicam,” Petitioner was instructed to stop the medication and follow-up in-person with the eye clinic. *Id.* at 202.

- During a telephonic PT visit on June 28, 2021, Petitioner reported that "his pain '[wa]s nonexistent.'" Ex. 4 at 139. He added he was performing his daily activities differently and his ROM "[wa]s still not where it should be." *Id.* (noted by quotes in the record to be Petitioner's exact wording).

- Approximately three months later on October 4, 2021, Petitioner returned to PT, informing the therapist that he would be "moving overseas within two weeks and w[ould] be returning in six months." Ex. 4 at 130. While "stating that he ha[d] many exercises and was not able to fit all in his day," he reported that his pain wasn't bad at rest and "2/10 at worst." *Id.* The therapist "educated [Petitioner] on [the] importance of HEP compliance," instructing him to perform his stretching exercises daily and strengthening exercises three to four times a week. *Id.*

- In his declaration signed on September 28, 2022, Petitioner stated that he "experienced normal pain and soreness" upon vaccination (Ex. 1 at ¶ 6), which, over the next few weeks, "did not go away but worsened" (*id.* at 8). Theorizing that his pain "was likely reduced by the Hydrocodone medication" he was taken for his dental condition (*id.* at ¶ 10), he recalled "still experiencing pain . . . and limited range of motion" when he left for Cambodia (*id.* at ¶ 11). Regarding the duration of his pain, he stated that he "still ha[s] occasional mild pain in [his] left shoulder and a restricted range of motion . . . [which] prevents [him] from using [his] left arm the way [he] was accustomed to before the September 10, 2020, influenza vaccine." *Id.* at ¶ 31.

- On March 19, 2026, Petitioner filed a motion requesting subpoena authority for the hospital in Cambodia to produce the results of the MRI he underwent in December 2020. ECF No. 37. Accompanying the motion was an unsigned supplemental declaration containing additional details regarding the medical treatment he received while in Cambodia. ECF No. 36.

During a recent call in this case, the parties were informed that I would review the record as it currently stands, to determine if I could issue a ruling on pain onset – the source of Respondent's only objection. *See* Minute Entry, dated May 7, 2026. I have determined there is sufficient evidence to support a finding favorable to Petitioner.

Although Petitioner failed to mention any left shoulder pain when seeking treatment on several occasions during the twenty days post-vaccination before his September 30, 2020 return to Cambodia, I do not find this omission to be fatal. Six days before

vaccination, he had cracked a back molar – a condition which no doubt caused him significant pain. Obtaining treatment for this condition was clearly a priority, and the need for that specific treatment was heightened by his imminent return to Cambodia. Furthermore, it is likely that the hydrocodone prescribed after Petitioner's dental procedure also ameliorated any left shoulder pain he was feeling at that time.

Otherwise, a delay in treatment is never per se evidence against onset, since vaccination-related pain can be perceived to be likely transient. As I have stated on numerous occasions, "[i]t is common for SIRVA claimants to delay treatment, thinking his/her injury will resolve on its own." *Matthews v. Sec'y of Health & Hum. Servs*., No. 22-1396V, 2024 WL 3026843, at *6 (Fed. Cl. Spec. Mstr. May 15, 2024).

The above medical entries show that, despite his initial delay, when Petitioner did seek treatment, he consistently attributed his left shoulder pain to the flu he received on September 10, 2021. *See,* e.g., Ex. 4 at 240 (first report of left shoulder pain during a December 3, 2020 call) and 193 (history provided at his initial PT evaluation on February 17, 2021). While these entries were based upon information provided by Petitioner, they still should be afforded greater weight than more current representations, as they were uttered contemporaneously with Petitioner's injury for the purposes of obtaining medical care. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information *supplied to* or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528. Information provided by Petitioner to a treater and contained in a contemporaneous record deserves weight, and should not be considered subjective merely because it came from a patient, rather than physician.

Accordingly, I find there is preponderant evidence to establish the onset of Petitioner's pain occurred within 48 hours of vaccination.

## II. Additional Requirements for Entitlement

### A. Legal Standards

In addition to requirements concerning pain onset (discussed above in Section I), symptoms duration, and the lack of other award or settlement,[6] a petitioner must establish

[6] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)XIV.B. The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

### B. Analysis

Respondent has identified no further objections to compensation, and I find Petitioner has satisfied all criteria for a Table SIRVA injury following receipt of a flu vaccine. There is no evidence of prior *left* shoulder pain, inflammation, or dysfunction or an alternative cause for Petitioner's symptoms. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner exhibited pain and limitations in ROM solely in his left, injured shoulder. *E.g.,* Ex. 4 at 230 (PCP appointment via video conferencing on January 21, 2021), at 196 (initial PT evaluation on February 17, 2021); *see* 42 C.F.R. § 100.3(c)(10)(iii) (third QAI criterion).

As I have determined in this ruling, the record supports a finding that Petitioner suffered pain within 48 hours of vaccination. *See supra* Section I.B.; 42 C.F.R. § 100.3(c)(10)(ii) (second QAI criterion). Additionally, the medical records show Petitioner suffered the residual effects of his injury for more than six-months. Ex. 4 at 183-84 (PT session noting pain at a level of two and labeling all goals as progressing); *see* Section 11(c)(1)(D)(i) (six-month severity requirement). And the vaccine record shows Petitioner received the flu vaccine at a Walgreens Pharmacy in Vancouver, Washington. Ex. 5 at 5; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Furthermore, there is no evidence that Petitioner has collected a civil award for his injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

## III. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, his pain and suffering award will not likely be significant. Petitioner admitted to significant pain relief from the dental-related hydrocodone until December 2020. Ex. 1 at ¶ 10. He experienced some difficulty sleeping and performing daily tasks thereafter, but reported pain varying from three to five at an initial PT evaluation. Ex. 4 at 193. And throughout the course of his injury, his treatment was minimal – consisting only of pain medication, x-rays, two MRIs, and several PCP visits and PT sessions over a duration of one year.

The parties should endeavor to reach an informal agreement related to compensation based on my initial views. Because they already tried to do so before, I expect they will be able to quickly determine if settlement is now possible in light of my fact determination. **Petitioner shall file a joint status report on behalf of the parties**

**updating me on their damages discussions by no later than Friday, August 21, 2026.**

**Conclusion**

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master